3-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

LUIS FREIRE ROLON
NANCY PEREZ ARROYO

Debtors.

CASE NO. 04-08508 (ESL)

CHAPTER 7

## OPINION AND ORDER

This case is before the court upon a motion to dismiss pursuant to 11 USC § 707(b) filed by the United States Trustee (the "UST") on January 12, 2005 (Docket No. 20), and Debtors' response to the motion to dismiss filed on March 21, 2005 (Docket No. 27). The United States Trustee seeks the dismissal of the case for substantial abuse, arguing that Mr. Freire Colon's contributions to his retirement plan and the payments to repay the retirement plan loans of both Debtors, are not necessary for the maintenance and support of the debtors and their family, and are, thus, disposable income available to fund a repayment plan of 100% to all creditors. In turn, Debtors argue that courts have permitted the use of income to make repayments on loans from pension plans and contributions to pension plans. For the reasons stated below this court finds that an evidentiary hearing will be necessary for a final determination on the motion to dismiss.

According to Schedule I filed on August 13, 2004 (Docket No. 1), co-Debtor Mr. Luis Freire Rolon has been an employee at Nypro, PR Inc since 1983. His occupation, however, is not disclosed. Mr. Freire Rolon's gross monthly salary is $5,166.68, and he contributes $258.33 to his retirement plan, that is, 4.99% of his salary. The amount of $310.00 is also deducted from Mr. Freire Rolon's salary as payment for a loan against his retirement plan. His total net monthly income is $3,749.29. Mr. Freire Rolon's spouse, co-Debtor Nancy Perez Arroyo, is a teacher employed by the Puerto Rico Education Department since 1982 with a gross monthly salary of

$2,080.00. Ms. Perez has a monthly deduction of $287.68 as payment for her retirement plan loan. Her total net monthly income is $1,475.60. Debtors' combined monthly income is $5,224.89. Debtors have three dependents ages 20, 19 and 16.

The UST does not question the reasonableness of any of the expenses listed in Debtors' Schedule J. Debtors' highest monthly expenses are: $2,031.13 for the home mortgages, $200.00 for home maintenance, $550.00 for food, $200 for clothing, $350 for transportation not including car payments (presumably gasoline), $841.00 for auto payments[1], $280 for school tuition and expenses and $225.00 for college tuition and expenses. Debtors total monthly expenses are $5,255.13. However, the UST argues that the contributions to Mr. Freire's retirement plan and the payments to repay the retirement plan loans of both Debtors, "are not necessary for the maintenance and support of the debtors and their family". The UST would have the court add back these deductions as disposable income available to fund a repayment plan. Docket No. 20, page 3. In support of her argument the United States Trustee cites the following cases: In re Behlke, 358 F.3d 429 (6th Cir. 2004); In re Mendoza, 274 B.R. 522 (Bankr. D.Ariz. 2002); In re Heffernan, 242 B.R. 812 (Bankr. D. Conn. 1999); In re Carlton, 211 B.R. 468 (Bankr. W.D.N.Y. 1997); In re Anes, 195 F.3d 177 (3rd Cir. 1999); In re Harshbarger, 66 F.3d 775 (6th Cir. 1995) and In re Blum, 255 B.R. 9 (S.D. Ohio 2000). In her reply to Debtors' opposition to the motion to dismiss, the UST discusses the case of In re Hand, 2005 WL 894639 (Bankr. N.H., April 6, 2005) and mentions In re Caraballo 03-04201(MWV) subjudice. The UST adjusted Debtors' total income, increasing it by $856.02 to include the payments on Mr. Freire Rolon's retirement

---

[1] Debtors listed in Schedule C (secured claims) two car loans to Firstbank; one incurred in 2001 and the other in 2003. In turn, Schedule B reflects that Debtors own a 2001 Toyota Celica (assigned a market value of $14,775.00) and a 2003 Toyota Corolla (assigned a market value of $11,625.00).

plan and to repay both Debtors retirement plan loans, which would allow full payment to unsecured creditors through a five year plan. The UST explains that Schedule F shows $48,094.32 in unsecured claims, and the multiplication of $856.02 by 60 (number of months in a 5 year plan) totals over $51,000.

Debtor listed only four secured claims on Schedule C; two mortgages and two car loans. Schedule F includes an $11,721.24 claim of Asociacion Empleados ELA for a 2004 loan and a $12,000.00 claim of Junta Retiro Maestros for a 2003 loan, the sum of which is $23,721.24. The loan taken by Mr. Freire Rolon against his retirement plan appears not to be listed. Debtors also listed a claim of the US Department of Education for a student loan in the amount of $8,921.81. The remaining $15,451.27 of unsecured nonpriority debt is from various credit card accounts and small consumer loans.

In their reply to the UST's motion to dismiss Debtors allege that their ability to fund a chapter 13 plan is not enough for a finding of substantial abuse. Debtors state that the courts are split on whether to allow payments on retirement loans and to retirement funds, and thus, the court must apply the totality of circumstances standard to determine if these expenditures are reasonably necessary, rejecting a *per se* rule that pension loan repayment expenses and contributions may never be reasonably necessary for the maintenance and support of debtors and their dependents. Debtors urge the court to take into consideration Congress' clear interest to protect pension plans and encourage retirement savings as reflected in the statutes which have created ERISA, Keogh plans and IRA's. Furthermore, Debtors argue that a determination that pension loan repayments should be disposable income would discourage debtors in need of a new car or other necessities, from taking more economical loans against their pension plans if needed, by choosing equity mortgage loans or car loans at a much higher interest rate, thereby

reducing disposable income for unsecured creditors. If debtors are not allowed to contribute to their pension plans, their tax burden will increase. Similarly, if debtors are not permitted to repay their pension plan loans, the balance of the loan will be considered taxable income and a 10% penalty would be imposed. Debtors argue that under BAPCPA the Bankruptcy Code was amended in its section 362 to exclude from the bankruptcy stay payments made for retirement plan loans and in its section 1322 to include that any amounts required to repay retirement plan loans will not constitute disposable income under section 1325. Lastly, Debtors maintain that contributions to retirement plans are reasonably necessary expenses, as other expenses incurred to meet future needs, for example, expenses incurred by a debtor in their children's education, for medical, dental and optical insurance, union dues, life and disability insurance, for a contingency fund. Courts analyze the facts of each case to determine reasonableness. Mandatory deductions for social security are recognized as appropriate in order to provide income when the debtor is no longer in the work force. Debtors state that pension contributions are just as necessary when it is clear that social security benefits will be insufficient to meet the needs of our population at retirement age.

In her reply to debtor's opposition the UST again argues that payments on retirement plan loans are not necessary for the maintenance and support of the debtors and are, thus, disposable income. Regarding the contributions to the pension plan, the UST states that she does not believe a "per se" rule should be applied, however, she states that debtors do not set forth the circumstances that would lead the court to conclude that in this case the contributions are reasonably necessary. The UST relies on the case of In re Hand, 323 B.R. 14 (Bankr. D.N.H. 2005) where Judge Deasy found that a payroll deduction of 13% for the debtors pension plan was not reasonable.

The First Circuit Court of Appeals in the case of In re Lamanna, 153 F3d 1(1st Cir. 1998) adopted the totality of circumstances test as the measure of substantial abuse under 11 USC § 707(b), rejecting a *per se* approach and joining the Fourth, Sixth, Eighth and Ninth Circuits in so doing. The court concluded that the bankruptcy court's decision to dismiss a chapter 7 case due to the debtor's ability to repay his debts out of future disposable income was appropriate. In Lamanna, the debtor argued that his expenses were artificially low because he was living with his parents who subsidized his needs, and without that he would not be able to limit his expenses to $580 per month and would thus have no disposable income to fund a repayment plan. However, Mr. Lamanna acknowledged that his expenses were accurate and that he did not anticipate moving out of his parents' house. *Id.* at 3. The Lamanna court firstly explained that section 707(b) was enacted in 1984 in response to the credit industry's unhappiness with the fact that chapter 7 debtors had a right to discharge all their debts in exchange for liquidating their nonexempt assets for the benefit of creditors even when they had the capacity to repay their debts partially or even in full. "Section 707(b) was enacted to impose a restraint on consumer debtors' access to Chapter 7 discharge by interposing bankruptcy courts as gatekeepers who could examine the worthiness of debtor petitions and dismiss those petitions deemed abusive." *Id.* "Substantial abuse" is not defined in the Bankruptcy Code thus it is for the courts to determine how it will be applied. *Id.* at 4. The court expressly rejected the notion that "substantial abuse" refers only to bad faith acts.

> In determining whether to apply § 707(b) to an individual debtor, . . . a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.

*Id.* As expressed above the court also rejected a *per se* rule mandating dismissal for "substantial abuse" whenever the debtor is able to repay his debts out of future income. "Such strict interpretations cannot be squared with the open-textured nature of § 707(b) and are inconsistent with § 707(b)'s purpose of guiding, not constraining, bankruptcy courts in the exercise of their equitable discretion." *Id.* at 4-5.

The <u>Lamanna</u> court adopted a test used by the Sixth Circuit in the case of <u>In re Krohn</u>, 886 F.2d 123 (6th Cir. 1989) to determine whether to apply § 707(b) to an individual debtor and explained that these are relevant but nonexclusive factors to be considered upon determining "substantial abuse".

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustments of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.* at 4 (Citation ommitted).

The UST argues that the repayment of the retirement plan loans and the contributions to a private retirement plan is disposable income, with which debtors could fund a payment plan under Chapter 13 of the Bankruptcy Code or otherwise. None of the other expenses of debtors have been questioned.

The Bankruptcy Code in its section 1325(b)(1)(B) provides that

> [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan - the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan.

- 6 -

11 USC § 1325(b)(1)(B)[2]. Disposable income is defined in § 1325(b)(2) as "income which is received by the debtor and which is not reasonably necessary to be expended - for the maintenance or support of the debtor or a dependent of the debtor." 11 USC § 1325(b)(2). However, the term "reasonably necessary" is not defined in the Bankruptcy Code. Whether the payments on a retirement plan loan and as contribution to a pension plan are reasonably necessary to be expended for the maintenance or support of the debtors is a matter for judicial interpretation.

Following Lamanna's interpretation of the spirit of section 707(b), this court rejects a *per se* rule and finds that the circumstances sorrounding each individual case and debtor must be analyzed before determining that payments made to retirement plan loans and as contributions to pension plans are reasonably necessary for the debtor's maintenance and support. We acknowledge that some courts have chosen to view the pension loan repayment standing alone, adopting a "bright line" rule that pension loan repayments are disposable income.

> The few cases that declare that certain expenses, for example pension loan repayments and pension contributions, are never "reasonably necessary" within the meaning of § 1325(b)(2) have not been accepted universally. Compare, e.g., Anes v. Dehart (In re Anes), 195 F.3d 177, 180-81 (3d Cir. 1999)("The Court of Appeals for the Sixth Circuit has held that repayment of amounts withdrawn from retirement accounts is not reasonably necessary for a debtor's maintenance or support [**8] ... We agree.") (citation omitted); and Harshbarger v. Pees (In re Harshbarger), 66 F.3d 775, 777 (6th Cir. 1995)("[pension loan repayments] may represent prudent financial planning, but [they are] not necessary for the 'maintenance or support' of the debtors."); with New York Employees' Ret. Sys. v. Sapir (In re Taylor); 243 F.3d 124, 129 (2d Cir. 2001) (reasonable necessity of debtor's pension contributions and pension loan repayments must be considered case-by-case); and In re Guild, 269 B.R. 470, 474 (Bankr. D. Mass. 2001)(collecting cases and rejecting per se rule for pension contributions and pension loan repayments). It is generally agreed that, for purposes of § 1325(b)(2) analysis, there is no meaningful distinction between pension contributions and pension loan repayments. See, In re Guild, 269 B.R. at 472-73.

---

[2] Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 USC §§ 101, *et seq.* applicable in the case at bar.

- 7 -

In re Woodman, 287 B.R. 589, 592 (Bankr. D. Me). This court concludes that because the Bankruptcy Code does not specify the kind of expenses that are "reasonably necessary", the reasonableness of the expenses must be determined upon examining the totality of the debtor's circumstances. In re Hebring, 463 F.3d 902 (9th Cir. 2006); In re Guild, 269 B.R. 470, 474 (Bankr. D. Mass 2001); In re Robbins, 333 B.R. 575 (Bankr. D.Mass. 2005). Adopting a "totality of circumstances" rule the Second Circuit in In re Taylor, 243 F.3d 124 (2d Cir. 2001) set out certain factors for the court to consider when confronted with this issue.

> In making this determination of whether or not pension contributions are reasonably necessary for an individual debtor, the bankruptcy judge may consider any factors properly before the court, including but not limited to: the age of the debtor and the amount of time until expected retirement; the amount of the monthly contributions and the total amount of pension contributions debtor will have to buy back if the payments are discontinued; the likelihood that buy-back payments will jeopardize the debtor's fresh start; the number and nature of the debtor's dependants; evidence that the debtor will suffer adverse employment conditions if the contributions are ceased; the debtor's yearly income; the debtor's overall budget; who moved for an order to discontinue payments; and any other constraints on the debtor that make it likely that the pension contributions are reasonably necessary expenses for that debtor.

In re Taylor, 243 F.3d at 129-130. Other important considerations to weigh in are the circumstances sorrounding the pension loan taken, that is, when it was taken, for what amount, for what purpose and how it was in fact used, and the same for the unsecured debt listed in Schedule F. At this time the record is unclear as to the claims the Debtors would discharge in Chapter 7. If the chapter 7 trustee is able to generate funds from the available assets of the estate to pay unsecured creditors must be considered. It should be noted that, as argued by Debtors, the United States Trustee in her analysis is not considering the reduction in disposable income caused by the tax consequences of the pension plan paying the loan balance and the elimination of the retirement contributions.

The UST and the debtors cite the case of In re Caraballo, 328 B.R. 12 (Bankr. D.P.R. 2005), a chapter 13 case decided after the briefs in this case were submitted, with similar matters

in controversy. In <u>Caraballo</u> the Chapter 13 trustee objected to the Chapter 13 plan confirmation on the grounds that the debtors' monthly pension contributions and loan repayments should be included as disposable income as they are not "reasonably necessary" expenses. In that case the court agreed with <u>In re Colon Vazquez</u>, 111 B.R. 19 (Bankr. D.P.R. 1990) which allowed the contributions to the pension plan as "reasonably necessary" expenses based on the fact that contributions made were compulsory and a condition for the debtor's continued employment under state law, that the deduction was not a substantial amount and it fulfills a public policy enunciated by the Legislature of the Commonwealth of Puerto Rico. The <u>Caraballo</u> court also noted in finding that the loan repayment was not a "reasonably necessary" expense the fact that debtors did not respond to the Chapter 13 Trustee's opposition to confirmation. The debtors in <u>Caraballo</u> did not argue that their retirement was imminent and they needed these retirement funds when they retired, or any other fact that would establish that this expense was "reasonably necessary". The court concluded that their silence inferred that they did not disagree with the Chapter 13 Trustee. <u>In re Caraballo Rivera, 328 B.R. 12, 17 (Bankr. D.P.R. 2005)</u>. The factual scenario in this case is clearly different.

The UST relied on the case of <u>In re Hand</u>, 323 B.R. 14 (Bankr. D.N.H. 2005), wherein the UST moved for the dismissal of the case pursuant to § 707(b). The court held a hearing where the UST based her argument on four expenses she deemed excessive: the monthly contribution to his 401(k) plan ($ 1, 115.83), monthly payment on a timeshare unit in Florida ($ 310.00), day care expense($ 520.00) and history of tax refunds ($ 6,942.00 for calendar year 2004). <u>In re Hand, 323 B.R. 14, 17 (Bankr. D.N.H. 2005)</u>. Following <u>Lamanna</u> the court looked at the totality of circumstances in reaching its decision. Regarding the monthly contribution to the pension plan, the court concluded that pension plan contributions of 13% while not paying

- 9 -

substantial unsecured debts that arose from discretionary spending was not reasonable. The court weighed that the debtor did not present any evidence that would support a finding that the debtor would be unable to adequately fund his retirement in the twenty years of working life remaining after completion of a three year chapter 13 plan.

## Conclusion

In view of the aforestated this court must analyze all the facts sorrounding this case in order to render a decision, adopting a "totality of circumstances" rule on the issue of whether contributions to retirement plans and pension loan payments constitute disposable income. Therefore, this court finds that an evidentiary hearing will be necessary for a final determination on the motion to dismiss. The Clerk shall schedule a pre-trial.

SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of May 2007.

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge